The document below is hereby signed.

Signed: April 21, 2010.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. |
| | ) | 10-10001 |
| v. | ) | |
| | ) | |
| HOMES AT POTOMAC GREENS ASSOCIATES, LIMITED PARTNERSHIP, *et al.*, | ) ) ) | |
| | ) | **Not for Publication in** |
| Defendants. | ) | **West's Bankruptcy Reporter** |

<u>MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS</u>

This addresses the motion of defendant Chase Home Finance, LLC ("Chase"), to dismiss the amended complaint in the above-captioned adversary proceeding against it.  For the reasons set forth below, I will grant Chase's motion.

I

On May 14, 2009, the plaintiff, Stephen Thomas Yelverton,

filed a petition in this court seeking relief under chapter 11 of the Bankruptcy Code (11 U.S.C.).  Thereafter, on January 4, 2010, Yelverton commenced this adversary proceeding seeking to recover from the defendants[1] damages arising from the purchase and construction of a home located at 1804 Potomac Greens Drive, Alexandria, VA, and filed an amended complaint on February 16, 2010.  The material allegations in Yelverton's amended complaint as they relate to Chase are as follows:

On July 10, 2005, Yelverton entered into a contract to purchase a yet-to-be-constructed townhouse in Alexandria, Virginia, with the closing to occur on September 5, 2006.  The purchase price of the home was $761,615, to be financed by a first mortgage on the property in the amount of $571,200 and second mortgage of $152,300.  In order to facilitate the sale of their properties, the sellers entered into a long-term agreement with George Mason Mortgage, LLC, to provide financing to prospective buyers with discounts and quick financing approval.  Pursuant to that long-term financing agreement, George Mason extended financing to Yelverton.  Yelverton, in turn, granted

---

[1] The seller of the property was Homes at Potomac Greens Associates, Limited Partnership, and the developer of the property was Potomac Greens Associates, LLC.  Potomac Land, LC, and Homes at Potomac Greens were the builders, and EYA Marketing was the sellers' agent.  Homes at Potomac Greens also formed a home owners association.  All of these parties are additional defendants in this adversary proceeding and for purposes of this motion to dismiss will be referred to as the "sellers."

George Mason a first and second mortgage on the property.  Upon closing, George Mason assigned the first mortgage to Chase.

After moving into the residence in October 2006, Yelverton complained to the sellers about excessive noise levels from the metro and freight trains that ran adjacent to the house.  Noise level measurements were taken at the house, and Yelverton requested that action be taken to mitigate or reduce the disturbance.  The sellers refused to take any action to mitigate the noise issues, and in October 2007 Yelverton vacated the property and enlisted a broker to sell the house.  By May 2008, the broker had still not sold the house and in June 2008, Chase foreclosed upon its mortgage and assessed a deficiency against Yelverton.

In his amended complaint, Yelverton first seeks to hold Chase jointly and severally liable with George Mason for the entire amount of the first mortgage by virtue of it being George Mason's assignee.  George Mason, in turn, Yelverton argues, is liable for the defective design of his home under a theory that by entering into a long-term agreement with the seller to provide financing, George Mason became the sellers' partner and, consequently, jointly liable with the sellers for the defects in the property.  Second, Yelverton seeks to use the fraudulent conveyance avoidance provision of § 548(a)(1)(B) to void the foreclosure and to void any mortgage payments made two years

before his petition date.  Finally, Yelverton invokes the strong-arm powers of § 544(a) and § 544(b)(1) to avoid the entire mortgage and the foreclosure.

In response to Yelverton's amended complaint, Chase filed its motion to dismiss, to which Yelverton filed in opposition and to which Chase filed in reply.

II

The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint."  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003).  In deciding a motion to dismiss, although the court "must construe the allegations and facts in the complaint in the light most favorable to the plaintiff . . . ," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002), the complaint must nevertheless plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint . . . . [nor must it] accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  In deciding a motion to dismiss, "the Court may only consider the facts alleged in the complaint, documents attached as exhibits or

4

incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt*, 226 F. Supp. 2d at 196.

### III

In its motion, Chase argues that dismissal is proper on Yelverton's § 548 and § 544 claims based on his failure to state a claim upon which relief could be granted. I will address Yelverton's § 548 claims first and then turn to his claims under § 544. Finally, I will address Yelverton's contention that Chase is liable under what appears to be a successor liability theory.

#### A. Section 548 Claims

#### 1. Foreclosure Sale

Chase first argues that dismissal is proper on Yelverton's § 548 avoidance claim for the foreclosure due to his failure to allege facts in support of the claim. Under § 548(a)(1)(B) a trustee may avoid any transfers of the debtor's property in the two years prior to bankruptcy where (1) the debtor received less than reasonably equivalent value and (2) the debtor was insolvent at the time of the transfer or became insolvent as a result of the it.

First, Yelverton's amended complaint should be dismissed because he failed to allege that he did not receive reasonably

5

equivalent value on the foreclosure. When a creditor forecloses on collateral, the debtor receives reasonably equivalent value as long as the foreclosure sale was conducted in accordance with the state's foreclosure laws. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994). Yelverton's amended complaint alleges nothing about the conduct of the foreclosure sale. In fact, the only mention Yelverton makes of reasonably equivalent value in his entire amended complaint is his mere conclusory statement that "at the time of the foreclosure, the Debtor was insolvent and did not receive 'reasonably equivalent' value for the transfer." Simply reciting § 548(a)(1)(B)'s test for fraudulent transfer avoidance actions is insufficient under *Twombly* to survive Chase's motion to dismiss.[2]

Second, Yelverton has also failed to alleged insolvency on the date of foreclosure. The only mention of insolvency is Yelverton's recitation of the § 548(a)(1)(B)'s avoidance test. And, for the reasons stated above, this conclusory assertion is insufficient to survive the motion to dismiss.[3]

---

[2] I note that in his opposition to Chase's motion to dismiss Yelverton states that he did not receive a credit against the amount outstanding from the foreclosure sale, I will not consider this as it is a fact that should have been alleged in his amended complaint. And, in any event, this statement is at odds with the fact that Chase has not filed a proof of claim in this case for any deficiency as a result of the foreclosure and the bar date for filing proofs of claim has passed.

[3] I note that in his opposition to Chase's motion to dismiss, Yelverton sets forth his assets and liabilities as of

2. Mortgage Payments

Chase next argues that the mortgage payments Yelverton made are not avoidable because he has failed, again, to plead the necessary facts in support of the claim. In his amended complaint, Yelverton simply states that he "invokes 11 U.S.C. 548(a)(1)(B)(i) and (ii)(I) . . . to VOID the transfer from him for mortgage payments."

First, Yelverton has not alleged, as a matter of law, that he did not receive reasonably equivalent value in exchange for his mortgage payments. Although in his amended complaint Yelverton states that he moved out of the house in October 2007, the mere fact that Yelverton did not live in the house while he was paying on the mortgage does not mean that he did not receive reasonably equivalent value for those payments. Yelverton's mortgage payments were payments on antecedent debt, which § 548(d)(2)(A) includes in the definition of value. Moreover, the mortgage payments were reasonably equivalent: in exchange for his payments, Yelverton received a curtailment on the principal of his loan and the continued right to defer full payment of the money that had been lent, as represented by the interest portion of his payments. The fact that Yelverton did not occupy the

---

the foreclosure date and states that he received nothing in exchange for the foreclosure. Once again, however, an opposition is not the appropriate place to plead these facts. Rather, these were facts that Yelverton should have pled in his amended complaint.

residence while he was making those payments is of no consequence to this analysis.

Second, even if Yelverton's mortgage payments were not reasonably equivalent value, Yelverton's failure to plead insolvency on the transfer date is, again, fatal to his § 548(a)(1)(B) claim.  As with his § 548 foreclosure avoidanace claim, Yelverton has failed to plead any facts relating to his insolvency on the dates of the mortgage payments he is seeking to avoid.  Even in his opposition to Chase's motion to dismiss, the most Yelverton can say is that he was insolvent for "most of the time from May 2007 through at least the end of 2008 . . . ." Were I to consider the facts alleged in his opposition, which I do not, even these would not be sufficient.  Instead, Yelverton would need to identify the exact payment dates on which he was insolvent or became insolvent because of the payment.[4] Accordingly, Yelverton's § 548(a)(1)(B) claim based on the mortgage payments is appropriately dismissed.

### B. Section 544 Claims

Chase argues that Yeverton's § 544 claims should be dismissed due to his failure to plead specific facts in support

---

[4] Alternatively, Yelverton's amended complaint could have survived the motion to dismiss by alleging that he was insolvent throughout the period for which he was seeking to avoid payments, if that were the case.  That does not, however, based on Yelverton's opposition, appear to be the case.

of the claims. In the amended complaint, Yelverton invokes §§ 544(a) and (b) as the basis for avoiding Chase's foreclosure on the property and the fixing of the mortgage.

Under § 544(a), the trustee is given the power to avoid any transfer of an interest of the debtor in property or obligation incurred by the debtor that would be voidable by any one of three hypothetical entities: (1) a hypothetical lien creditor who extends credit to the debtor on the eve of bankruptcy and obtains a judicial lien on all of the debtor's property; (2) a hypothetical lien creditor who extends credit to the debtor on the eve of bankruptcy and obtains an execution which is unsatisfied; and (3) a bona fide purchaser for value of real property of the debtor as of the commencement of the case. The purpose of these provisions is to allow the trustee to avoid any unperfected security interests on the debtor's property. In his amended complaint, Yelverton fails to allege that the mortgage was unperfected.[5] Without that allegation, Yelverton's § 544(a) claim fails.

Under § 544(b), the trustee may avoid for the benefit of

---

[5] I note that Yelverton invoked § 544(a) to void both the foreclosure and the mortgage. I have a hard time seeing how a trustee could use § 544(a) to void the foreclosure directly. Rather, it seems that any action to avoid a foreclosure under § 544(a) would be indirect. That is, the foreclosure would only be void by virtue of the mortgage or deed of trust under which the creditor foreclosed upon the property itself being void. I construe Yelverton's amended complaint as asserting just such an indirect attack upon the foreclosure.

general unsecured creditors any transfer of the debtor's interest in property or obligation incurred by the debtor that would be voidable by a creditor holding an unsecured claim.  In essence, this provision allows a trustee to avoid transfers in bankruptcy that would be avoidable by unsecured creditors under state fraudulent conveyance law.

First, Yelverton's § 544(b) claim must be dismissed because he has failed to identify an actual unsecured creditor that could avoid either the mortgage or foreclosure.  A trustee seeking to avoid a transfer of the debtor in property or an obligation incurred by the debtor must identify a "creditor holding an unsecured claim that is allowable under § 502" that could avoid the mortgage and foreclosure.  In other words, Yelverton had to identify an actual unsecured creditor that both held a claim at the time he entered into the mortgage or the foreclosure occurred, and had that claim as an allowed claim in this bankruptcy.  *In re International Loan Network, Inc.*, 160 B.R. 1, 18 (Bankr. D.D.C. 1993).  Yelverton has not identified any such creditor.

Moreover, even if such a creditor existed, Yelverton has not alleged facts that show that creditor would be able to avoid either the mortgage or the foreclosure under Virginia law.[6]  The

---

[6] The parties agree that both the foreclosure and the mortgage are governed by Virginia law.

Virginia fraudulent conveyance statute provides as follows:

> Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made. Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

To plead a prima facie case under Virginia Law, then, Yelverton had to allege that "(1) a transfer was made, (2) the transfer was not supported by consideration deemed valuable in law, and (3) the transfer was done when the transferor was insolvent or the transfer rendered the transferor insolvent." *In re Meyer*, 244 F.3d 352, 353 (4th Cir. 2001). Although it is clear that a transfer of Yelverton's property was made on both the mortgage itself and the foreclosure, because both were supported by valuable consideration and because Yelverton has failed to allege he was insolvent at the time of the transfer or became insolvent because of the transfer, his claim under § 544(b) also fails.

Regarding the mortgage itself, Yelverton's § 544(b) avoidance claim first fails because he received valuable consideration. In both his amended complaint and opposition to Chase's motion to dismiss, Yelverton wholly misconstrues the nature of the transaction he is seeking to avoid with Chase. In

11

sum, his argument is that because he received an allegedly defective house, he received less than adequate consideration from the purchase-money lender.  But Yelverton did not receive the house from the lender.  Rather, in exchange for his granting a first priority security interest in the property, Yelverton received $571,200.  It was that $571,200 that Yelverton used to purchase the property.  Any claim that Yelverton had to avoid the purchase of the home as a fraudulent conveyance, is appropriately limited to the sellers of the home, not the party who extended the financing.[7]  Moreover, dismissal of the amended complaint is also appropriate due to Yelverton's failure to allege insolvency.  As I pointed out in the section addressing Yelverton's § 548(a)(1)(B) claim, nowhere in his amended complaint does Yelverton allege specific facts pointing to his insolvency as of the date he entered into the mortgage or that the mortgage resulted in his insolvency.  Without specific facts in support of this prong, his claim under § 544(b) likewise fails.

Regarding Yelverton's § 544(b) claim to avoid the foreclosure, it too must be dismissed based on his failure to allege specific facts showing his insolvency on the date of the foreclosure or as a result of the foreclosure.

---

[7] For the reasons stated below, the mere fact that Chase took an assignment of the mortgage from George Mason, does not make then liable for any fraud imputed to George Mason by virtue of Yelverton's partnership theory.  And, accordingly, this would not be a basis for avoiding the mortgage as to Chase.

C. Successor Liability

The final issue to address is whether Chase could be held liable to Yelverton under what I am construing to be a theory of successor liability. In his amended complaint, Yelverton alleges that George Mason Mortgage, the entity that assigned the first mortgage to Chase, is liable with the sellers of the property for its defective design, breach of contract, and gross negligence, under a theory that George Mason and the seller were partners. Yelverton then argues that Chase, in turn, is jointly and severally liable with George Mason as its assignee of the first mortgage.

Under Virginia law, the general rule is that "a company that purchases or otherwise receives the assets of another company is generally not liable for the debts and liabilities of the selling corporation." *Kaiser Foundation Health Plan v. Moore*, 123 F.3d 201, 204 (4th Cir. 1997). There are, however, four exceptions to this rule: "(1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or de facto merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is fraudulent in fact." *Harris v. T.I., Inc.*, 243 Va. 63, 70 (1992). Yelverton has alleged no facts in support of any of these four exceptions, and,

accordingly, any claims against Chase under a theory of successor liability are appropriately dismissed.[8]

IV

Pursuant to the foregoing, it is

ORDERED that the Chase's motion to dismiss is granted.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.

---

[8] I note that the fourth exception--the transaction is fraudulent in fact--pertains to the transaction between George Mason and Chase. In order to meet this exception, Yelverton would have needed to allege that George Mason assigned the mortgage to Chase for the purpose of defrauding him. He has made no such allegation and, therefore, this exception would not apply.